IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BROOKE L. MOSHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 23-cv-2384-SMY ) |
| JENNIFER CLAYTON, and JACQUELYN AUSTIN,[1] | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Brooke L. Mosher filed the instant lawsuit *pro se*, seeking monetary relief against Defendants Jennifer Clayton and Jacquelyn Austin, in their individual capacities as social workers for the Illinois Department of Children and Family Services ("DCFS"). This matter is now before the Court for consideration of Plaintiff's Motion for Leave to Proceed *in Forma Pauperis* ("IFP") (Doc. 4) and Motion to Appoint Counsel (Doc. 5). For the following reasons, the motion to proceed IFP is **GRANTED**, and the motion to appoint counsel is **DENIED**.

**Motion for Leave to Proceed *in forma pauperis* (Doc. 4)**

Under 28 U.S.C. § 1915, an indigent party may commence a federal lawsuit without paying required costs and fees upon submission of an affidavit asserting the inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and the affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

---

[1] Plaintiff puts the State of Illinois in her first page in the caption (Doc. 3, p. 1), but puts these defendants in the section reserved for parties (Doc. 3, p. 2). The Court also notes this appears to be Plaintiff's third case involving the same facts, with the first two dismissed without prejudice at the IFP stage (23-CV-1808 and 23-CV-463).

Plaintiff has sufficiently established her indigence. Her monthly income is $1,880, but her monthly expenses for rent, phone, and electricity are approximately $3,167 (Doc. 4, pp. 1-2, 5). She owns a 2011 Mercedes-Benz but owes approximately $23,000 on it, which is more than its current value (Doc. 4, p. 3). Based upon this information, the Court finds that Plaintiff is unable to pay the costs of commencing her lawsuit. However, the Court's inquiry does not end there; § 1915(e)(2) requires careful threshold scrutiny of a Complaint filed by a plaintiff seeking to proceed IFP.

The Court may dismiss a case if it determines the action is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B); see also, *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003). The requirements for stating a viable claim § 1915(e)(2)(B)(ii) are the same as those for stating claims under the Federal Rule of Civil Procedure 12(b)(6). *Dewalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000). Specifically, the Complaint must contain allegations that go beyond a merely speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Courts may also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012).

### The Complaint

Plaintiff makes the following allegations in the Complaint or attaches documentation that establishes the following[2] (Doc. 3-1): On June 28, 2022, DCFS Investigator Jacquelyn A. Austin

---

[2] The Complaint is somewhat confusing, without clear timelines or legible handwriting; it becomes particularly hard to analyze when it is commentary on an attached document. Plaintiff is reminded that even though she is proceeding

issued a "Notification of a Suspected Child Abuse And/Or Neglect Document" to Plaintiff for suspected abuse or neglect of her son, C.J., based on "substance misuse" and "substantial risk of physical injury/environment injurious to Health and Welfare by Neglect" (Doc. 3-1, pp. 1-4). On July 1, 2022, Austin met Plaintiff and her husband, Wesley Mosher, at the residence of Plaintiff's father-in-law in Troy, Illinois (Doc. 3-1, p. 5). Austin notified Plaintiff and Mr. Mosher that there had been a call of suspected child abuse (Doc. 3-1, p. 5). Plaintiff and Mr. Mosher responded that this was a false call by third person who was extorting them to obtain monies owed by Mr. Mosher (Doc. 3-1, pp. 5-6). Mr. Mosher provided Austin with text messages from his phone confirming "[t]hat [third person] willfully called the Department of Children and Family Services abuse and neglect . . . . all because [Mr. Mosher] did not pay [third person] by that date and time" (Doc. 3-1, p. 8). Austin interviewed Plaintiff and Mr. Mosher and they gave truthful answers, including that they were in good mental health and were not abusing drugs or alcohol (Doc. 3-1, pp. 8-9). Austin confirmed that they were living in a hotel while looking for a rental and that they had applied for Blue Cross Blue Shield Medicaid for routine medical treatment for their son (Doc. 3-1, p. 11). Plaintiff was unsure if her son was up to date on his shots (Doc. 3-1, p. 11).

Austin tested them for drugs by mouth swab and the results were presumptively positive for methamphetamine (Doc. 3-1, p. 13). Austin called Defendant Jennifer Clayton (Austin's supervisor at DCFS) and had Plaintiff's son removed from the premises (Doc. 3-1, p. 13). Before leaving, Austin gave Plaintiff and Mr. Mosher a plan for obtaining their son back (a copy of the Safety Plan is attached to the Complaint) (Doc. 3-1, pp. 19-21).[3]

---

*pro se*, she must abide with Rule 8 that requires a "short and plain statement of the claim." Dismissal pursuant to Rule 8(a) of the Federal Rules of Civil Procedure can be appropriate when "a complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 775-776 (7th Cir. 1994). Plaintiff is also reminded that she may have to redact some information for privacy purposes, like social security numbers.
[3] Investigatory notes from DCFS that confirm much of the initial interview (Doc. 3-1, pp. 16-17, 22) are attached to the Complaint.

On July 5, 2022, Austin instructed Plaintiff and Mr. Mosher to undergo formal drug testing at Wood River, Illinois (Doc. 3-1, p. 33). According to a supervisory consultation between Defendants Austin and Clayton, Plaintiff's test returned negative alongside concerns that Plaintiff had "[taken] a urine specimen into the bathroom stall," while Mr. Mosher tested "positive for methamphetamine/amphetamine but adulterated" (Doc. 3-1, p. 60). Plaintiff asserts that this was false information (Doc. 3-1, p. 60).

Around the same time, Defendants Austin and Clayton promulgated another Safety Plan that assigned C.J. to a foster family with "supervised contact with the child" (Doc. 3-1, p. 48). The plan indicated that, "Both parents must complete a drug test and results must return negative for illicit drugs or drugs not prescribed to them" (Doc. 3-1, p. 48).

Clayton spoke directly with Plaintiff and Mr. Mosher about the drug test results (Doc. 3-1, pp. 52-57). She accused Plaintiff of not taking her son to the doctor enough and adulterating her urine sample and told Mr. Mosher that it was clear he had a drug problem (Doc. 3-1, p. 53). Mr. Mosher denied using methamphetamine, and Clayton called them both liars (Doc. 3-1, p. 53). Plaintiff agreed to submit to additional drug testing, a hair follicle test, if they obtained a "signed document" requesting it (Doc. 3-1, p. 55). Clayton hung up after criticizing them further for being drug users and for not taking their son to the doctor (Doc. 3-1, p. 56). A report attached to the complaint by defendant Clayton indicates that "the mother informed Austin that she is no longer in agreement with a safety plan" and that DCFS is "making the CRITICAL DECISION to take protective custody" (Doc. 3-1, p. 60). Plaintiff alleges, again, that this is false information (Doc. 3-1, p. 60).

On July 14, 2022, Plaintiff called Austin to notify her that C.J. had an upcoming primary care doctor visit at the Gateway Medical Group Family for a checkup, to update his vaccinations,

and to obtain an updated immunization record (Doc. 3-1, p. 33). Due to communication issues as C.J. was no longer in Plaintiff's custody, C.J. missed his appointment (Doc. 3-1, pp. 33, 44).

On July 28, 2022, there was a renewed shelter hearing on C.J.'s custody while Plaintiff and Mr. Mosher were both in custody. The hearing continued without their appearance or consent (Doc. 3-1, p. 61).[4]

Plaintiff asserts that Austin and Clayton's actions were unlawful and on various bases and violate various rights: unlawful searches and seizures, discrimination, "abuse of excessive use of power", unauthorized removal of a child, failure to provide required services, disclosure of confidential information, parental rights, First Amendment, and violations of various statutory rights.

## Discussion

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege that defendants deprived them of a right secured by the Constitution or laws of the United States, and that defendants acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "The deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 923 (1982). Moreover, a plaintiff must prove that the defendant was personally responsible for the deprivation of the constitutional right in question. *Rascon v. Hardiman,* 803 F.2d 269, 273 (7th Cir.

---

[4] The remainder of the Complaint consists of text messages between Plaintiff and various people, court documents, and an undated DCFS document finding that the allegation finding was "indicated" and that "[Plaintiff] has blatantly disregarded her parental responsibilities to prevent or mitigate the imminent risk of moderate to severe harm to her child" (Doc. 3-1, p. 103). C.J. has remained in foster care and Plaintiff has only had six visits with him since July 2022 (Doc. 3-1, p. 88). Plaintiff had a completely negative drug test in October 2022 (Doc. 3-1, p. 31).

1986) ("[an] individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation").

### Fourth Amendment (42 U.S.C. § 1983)

Removing C.J. from his home and parents and taking him into someone else's custody qualified as a seizure, and therefore raises a potential Fourth Amendment violation. *Brokaw v. Mercer County,* 235 F.3d 1000, 1010 (7th Cir. 2000). "In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances, meaning that state officers 'have reason to believe that life or limb is in immediate jeopardy.'" *Id.* The "focus is on the facts and circumstances known to defendants at the time they decided to remove [the child], and whether a prudent caseworker (meaning one of reasonable caution) could have believed that [the child] faced an immediate threat of abuse based on those facts." *Siliven v. Ind. Dep't of Child Servs.,* 635 F.3d 921, 925 (7th Cir. 2011).

Plaintiff alleges that there was no indicia of abuse or potential immediate threat of abuse, given that the call to DCFS was made for extortion purposes, and that C.J. was healthy and happy at the time of his removal. At the screening stage, these allegations are sufficient to this claim based on the initial seizure of C.J. survives.

Similarly, the "continued withholding of a minor may [also] constitute a constitutional violation [under the Fourth Amendment] where probable cause or reasonable suspicion dissipates." See, *Xiong v. Wagner,* 700 F.3d 282, 291 (7th Cir. 2012). Plaintiff asserts a viable continuing withholding claim by alleging that probable cause or reasonable suspicion for the continued custody of C.J. had dissipated after she had a completely negative drug test in October 2022.

**Procedural Due Process of the Fourteenth Amendment (42 U.S.C. § 1983)**

The Fourteenth Amendment protects against the deprivation of constitutionally protected interests without due process of law. *Brokaw,* 235 F.3d at 1020. The right to familial relations, as alleged by Plaintiff, is a protected liberty interest. *Id.* Both parental rights and a child's right to be nurtured by his parents cannot be denied "without an opportunity to be heard in a meaningful way." *Id.*, citing *Mathews v. Eldridge,* 424 U.S. 319, 333, (1976). The amount of due process required varies with the particular situation and is a "flexible" concept, but, at minimum, due process "requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents." *Id.*

Plaintiff alleges that Defendants Austin and Clayton repeatedly failed to listen to her admonitions regarding her son and that Clayton once spoke with Plaintiff and her husband but did not allow them to speak and falsely reported that Plaintiff was no longer interested in adhering to the Safety Plan to regain custody of her child. Plaintiff further alleges that Austin and Clayton allowed the hearing regarding Plaintiff's son's custody to go forward while she was in custody. These allegations are sufficient to plead a colorable Fourteenth Amendment due process claim.

**Substantive Due Process of the Fourteenth Amendment (42 U.S.C. § 1983)**

Rather than guaranteeing an individual the right to a fair decision-making procedure, the guarantee of substantive due process prevents the state from taking certain action, "no matter how much process it provides." *Miller v. Henman,* 804 F.2d 421, 427 (7th Cir. 1986). Substantive due process includes the parents' right "to bear and raise their children" and the child's right "to be raised and nurtured by his parents." *Hernandez ex rel. Hernandez v. Foster,* 657 F.3d 463, 478 (7th Cir. 2011) ("A family's right 'to remain together without coercive interference of the awesome power of the state' is 'the most essential and basic aspect of familial privacy'"). However,

substantive due process "should not be called upon when a specific constitutional provision protects the right allegedly infringed upon." *Brokaw*, 235 F.3d at 1017-18. Because the Court has determined that Plaintiff has alleged Fourth Amendment and procedural due process violations, the complaint allegations do not state a definite substantive due process claim. *Hernandez,* 657 F.3d at 474 (initial seizure and continued withholding of a child is more properly analyzed under the Fourth Amendment).

### Remaining Claims

Plaintiff's remaining claims can be dismissed as inadequately pled under *Twombly*. Although she alleges discrimination, abuse of power, failure to provide required services, and disclosure of confidential information, she does not specifically tie these to the actions of Defendants. Plaintiff also cites a number of Illinois statutes, but her allegations do not indicate how the Defendants violated these statutes or why she has a private cause of action under them. As such, these claims will all be dismissed without prejudice. Plaintiff's First Amendment claim is likewise vague and does not appear to be applicable here.

### Motion for Recruitment of Counsel (Doc. 5)

Plaintiff requests that this Court appoint her counsel. (Doc. 5). Litigants do not have a constitutional or statutory right to counsel. *Pruitt v. Mote,* 503 F.3d 647, 649 (7th Cir. 2007). That said, under 28 U.S.C. § 1915(e)(1), the Court has discretion to recruit counsel to represent indigent litigants in appropriate cases. *Johnson v. Doughty,* 433 F.3d 1001, 1006 (7th Cir. 2006). When deciding whether to recruit counsel for an indigent litigant, the Court considers (1) whether the indigent litigant has made reasonable attempts to secure counsel on his own, and, if so, (2) whether the difficulty of the case exceeds the litigant's capacity as a layperson to coherently present it. *Navejar v. Iyiola,* 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt,* 503 F.3d at 655).

Mosher has provided no documentation demonstrating she has made attempts to secure counsel on her own. Nor has she demonstrated that the difficulty of this case exceeds her capacity to litigate it without counsel. Accordingly, this motion is **DENIED**.

### Conclusion

As Plaintiff has stated claims under 42 U.S.C. § 1983, her Motion to Proceed *in forma pauperis* is **GRANTED**. Pursuant to Fed. R. Civ. P. 4(c)(3), The Clerk of Court is **DIRECTED** to prepare and issue, for each named defendant, Form AO 440, Summons in a Civil Action, to Plaintiff and enclose blank USM-285 forms for each named defendant. If Plaintiff wishes the United States Marshals Service to serve process in this case, she shall provide to the United States Marshals Service the summons issued, the appropriately completed USM-285 forms and sufficient copies of the complaint for service.

Upon receipt of the aforementioned documents from Plaintiff, and pursuant to Federal Rule of Civil Procedure 4(c)(3), the United States Marshal Service is **DIRECTED** to serve a copy of the Summons, Complaint and this Order upon the defendants in any manner consistent with Federal Rule of Civil Procedure 4, as directed by Plaintiff. Costs of service shall be borne by the United States.

**IT IS SO ORDERED.**

**DATED:  March 31, 2024**

　　　　　　　　　　　　　　　　　　　　　　**STACI M. YANDLE**
　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**